# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Paula S. Tishok, Gretchen Van Ness,  :
Kendal L. Hopkins, and Melissa Behm,  :
                                     :
           Petitioners        :
                                     : No. 136 C.D. 2015
          v.                : Submitted: November 20, 2015
                                     :
Department of Education,       :
                                     :
           Respondent     :

BEFORE:    HONORABLE DAN PELLEGRINI, President Judge[*]
                 HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE JAMES GARDNER COLINS, Senior Judge

**OPINION BY**
**SENIOR JUDGE COLINS**                      **FILED:  February 4, 2016**

          This matter is a Petition for Review filed by four alumnae of Wilson College (Wilson), Paula S. Tishok, Gretchen Van Ness, Kendal L. Hopkins, and Melissa Behm (collectively, Petitioners), appealing a final order of the Department of Education (the Department) that approved amendments to Wilson's Articles of Incorporation making Wilson fully coeducational. The Department has moved to dismiss the petition for review on the grounds that Petitioners lack standing to appeal the Department's order. Because we conclude that Petitioners lack standing, we grant the Department's motion and dismiss the petition for review.[1]

---

[*] This case was assigned to the opinion writer on or before December 31, 2015, when President Judge Pellegrini assumed the status of senior judge.

[1] The Department filed its application to dismiss on May 20, 2015, prior to the filing of the parties' briefs on the merits. By order dated June 30, 2015, this Court directed that the
**(Footnote continued on next page…)**

Wilson, a nonprofit corporation, is a private liberal arts college in Franklin County, Pennsylvania. (Certified Record (R.) at 5, Department Final Order, Report at 3; R. at 13, 1993 Articles of Incorporation ¶¶2-3.) Petitioners are all alumnae of Wilson: Petitioner Tishok is a 1971 graduate of Wilson, Petitioner Behm graduated in 1976, and Petitioners Van Ness and Hopkins graduated in 1980. (R. at 86-87, 90, 116, Hearing Transcript (H.T.) at 48-49, 52, 78; R. at 359-60, 365-66, 368, 12/12/13 Hopkins Letter and 12/11/13 Behm and Tishok Letters.) Petitioners Van Ness, Behm and Tishok have served as Wilson trustees in the past, but were no longer on its board of trustees at the time of the Department's proceedings in this matter. (R. at 87-88, 90, 106, 134-36, H.T. at 49-50, 52, 68, 96-98; R. at 365-66, 368, 12/11/13 Behm and Tishok Letters.) By virtue of their past service as members of the board of trustees, Petitioners Van Ness, Behm and Tishok are "Everitt-Pomeroy Trustees," an honorary position that is not part of the membership of the board of trustees and has no voting power. (R. at 87-88, 90, 135, H.T. at 49-50, 52, 97; R. at 365-66, 12/11/13 Behm Letter; R. at 414-15, Wilson By-Laws, Art. II, Art. III § 2.)

Wilson was founded in 1869 as a women's college and its original charter provided that its "object and purpose … are hereby declared to be to promote the education of young women in literature, science and the arts." (R. at

---

**(continued…)**

application to dismiss be listed for submission with the merits. In that order, the Court also directed the parties to address whether the Department's January 6, 2015 order "is an adjudication subject to appeal pursuant to the Administrative Agency Law, 2 Pa. C.S. §§ 501 - 508, 701-704, and this Court's decision in *Philadelphia Medical Society v. Sklaroff*, 699 A.2d 800 (Pa. Cmwlth. 1997) (en banc)," and Petitioners and the Department have addressed that issue in their briefs. In light of our conclusion that none of Petitioners has standing, we need not and do not address that issue.

5, Department Final Order, Report at 3; R. at 71-72, 143, H.T. at 33-34, 105.) In 1970, Wilson's charter was amended to provide that its "object and purpose … are hereby declared to be, to promote the education of both women and men in literature, science and the arts." (R. at 5, Department Final Order, Report at 3; R. at 72, H.T. at 34.) Since 1970, Wilson has participated in consortium and exchange programs with three coeducational colleges, Dickinson College, Franklin & Marshall College and Gettysburg College, under which both male and female students from those schools could take courses at Wilson and Wilson students could take courses at those schools. (R. at 5, Department Final Order, Report at 3; R. at 101, H.T. at 63). Wilson, however, continued to admit only women as Wilson students. (R. at 100-02, 140-41, H.T. at 62-64, 102-03.) In the 1970s, Wilson suffered declining enrollment, dropping from over 700 students in 1967 to approximately 200 in 1979. (R. at 51, H.T. at 13; R. at 434, *Zehner v. Alexander* Opinion.) In 1979, Wilson's board of trustees voted to close Wilson, but the Franklin County Court of Common Pleas enjoined the closure in an action brought by a Wilson trustee, a Wilson faculty member, and Wilson students and alumnae. (R. at 429-459, *Zehner v. Alexander* Opinion.)

Beginning in 1982, Wilson has offered a non-residential continuing education program open to both male and female students over the age of 24. (R. at 5, Department Final Order, Report at 3; R. at 99-100, 102-03, 143, H.T. at 61-62, 64-65, 105). In 1993, Wilson adopted, amended and restated Articles of Incorporation. (R. at 5, Department Final Order, Report at 3; R. at 13-15, 407-11, 1993 Articles of Incorporation.) The 1993 Articles of Incorporation provided in paragraph 3 that Wilson

> is incorporated exclusively for charitable, educational and
> scientific purposes within the meaning of section 50l(c)(3) of

the Internal Revenue Code, or the corresponding section of any future federal tax codes (the "Code") including, without limitation, the following purposes:

(a)  <u>in furtherance of its purpose set forth in the original charter, to operate a College for Women, which offers residential opportunity, and, in addition, to operate a co-educational College of Continuing Education</u>; and

(b)  to offer its students studies in literature, science and the arts in a liberal arts program, including preparation for specific careers as well as preparation for graduate and professional school; and

(c)  to grant to students under its charge diplomas or honorary testimonials, in such form as· it may designate, and also to grant and confer such honors, degrees and diplomas as are granted by any university or college in the United States.

(R. at 5, Department Final Order, Report at 3; R. at 13, 409, 1993 Articles of Incorporation ¶3; R. at 73-74, H.T. at 35-36) (emphasis added).  Male and female students in Wilson's continuing education program attended classes with Wilson's regular undergraduates and received Wilson degrees; until 2013, however, Wilson limited its undergraduate residential program to women.  (R. at 51, 157-59, H.T. at 13, 119-21.)

In 2012-2013, there were 316 students enrolled in Wilson's residential program and 305 students enrolled in its coeducational continuing education program.  (R. at 181, Wilson Written Testimony at 11; R. at 292, Petitioners' Rebuttal at 24.)  In January 2013, Wilson's board of trustees voted to make Wilson fully co-educational in all of its programs, including the residential program.  (R. at 63-64, H.T. at 25-26; R. at 186-877, Wilson Written Testimony in Support of Application for Approval at 16-17; R. at 384, Van Ness Request to Intervene in Approval Proceeding at 6.)  On May 17, 2013, Wilson's board of trustees voted to

4

amend the 1993 Articles of Incorporation, including amending paragraph 3 to state that Wilson

> is incorporated exclusively for charitable, educational and scientific purposes within the meaning of section 501(c)(3) of the Internal Revenue Code, or the corresponding section of any future federal tax codes (the "Code") including, without limitation, the following purposes:
> (a) <u>to promote the education of both women and men in undergraduate and graduate degree and non-degree programs</u>; and
> (b) to offer its students studies in arts, science, and religion in a liberal arts program, including preparation for specific careers as well as preparation for graduate and professional school; and
> (c) to grant to students under its charge diplomas or honorary testimonials, in such form as it may designate, and also to grant and confer such honors, degrees and diplomas as are granted by any university or college in the United States.

(R. at 17, 2013 Articles of Incorporation ¶3; R. at 65, 78-79, H.T. at 27, 40-41; R. at 607, Record of Board of Trustees' Amendment of Articles of Incorporation) (emphasis added).

Pennsylvania law requires that private colleges and universities submit amendments to their articles of incorporation to the Department for its review and approval to permit the Department to ensure that the changes comply with state requirements for institutions of higher education. 24 Pa. C.S. § 6504. On May 3, 2013, Wilson submitted the 2013 amendments to its Articles of Incorporation to the Department. (R. at 3, Department Final Order, Report at 1, Finding of Fact (F.F.) ¶1; R. at 597, 5/3/13 Wilson Email to Department.) In accordance with the requirements of 24 Pa. C.S. §§ 6503(e) and 6504(d), the Department published notice of Wilson's application for approval of the amendments to its Articles of Incorporation on July 13, 2013, stating that any

5

requests for a public hearing on the application, petitions to intervene and protests must be filed within 30 days. (R. at 3, Department Final Order, Report at 1, F.F. ¶5; 43 Pa. B. 3951.)

Petitioner Van Ness timely requested a public hearing and sought to intervene. (R. at 379-88, 8/6/13 Van Ness Letter Requesting Hearing and Intervention.) The Department denied the request to intervene, but granted Petitioner Van Ness limited participant status, permitting her to submit written testimony and argument against Wilson's application and speak at the public hearing. (R. at 370, 11/27/13 Department Letter; R. at 362-63, 12/11/13 Department Email.) Although the Department received protests and other responses to the published notice from 40 individuals and notified all of those individuals that they could request limited participant status, only Petitioners Tishok, Hopkins and Behm requested that they also be allowed to participate in the proceedings and the Department granted them limited participant status. (R. at 373-75, 10/24/13 Department Letter; R. at 370-71, 11/27/13 Department Letter; R. at 359-60, 362, 365-66, 368, 12/12/13 Hopkins Letter, 12/12/13 Van Ness Email and 12/11/13 Behm and Tishok Letters; R. at 354-57, 1/6/14 Department Letter.) No Wilson students or Wilson faculty sought to participate in the proceedings and no trustees sought to participate in opposition to the amendments to Wilson's Articles of Incorporation.

The Department held a public hearing on June 16, 2014, at which Wilson's attorney, its President and two members of Wilson's board of trustees spoke and argued in favor of Wilson's application for approval of the amendments to its Articles of Incorporation, and Petitioners spoke and argued against approval. (R. at 39-168, H.T.) The Department also received written testimony and post-

hearing submissions from both Wilson and Petitioners. (R. 171-343.) On January 6, 2015, the Department issued a decision approving Wilson's May 17, 2013 amendments to its Articles of Incorporation, concluding that the amendment making Wilson fully coeducational and the other amendments all conformed to the Department's regulations and satisfied the standards and qualifications for institutions of higher education. (R. at 2-18, Department Final Order.) Petitioners have filed the instant petition for review appealing that order.[2]

The threshold and dispositive issue before us is whether Petitioners have standing to seek this Court's review of the Department's order. To have standing to appeal a decision of a government agency, a person must show both that she has a direct interest in the matter and that she is aggrieved by the agency decision. 2 Pa. C.S. § 702; *Citizens Against Gambling Subsidies, Inc. v. Pa. Gaming Control Board*, 916 A.2d 624, 628-29 (Pa. 2007); *Pennsylvania Game*

---

[2] It is unclear whether the petition for review was timely filed. A petition for review must be filed within 30 days after the entry of the order that the petitioner seeks to appeal. Pa. R.A.P. 1512(a); *Riverlife Task Force v. Planning Commission of City of Pittsburgh*, 966 A.2d 551, 557 (Pa. 2009). The 30th day after the Department's January 6, 2015 order, February 5, 2015, was a Thursday. Petitioners' petition for review bears both an electronic filing date and a typed signature block date of February 6, 2015, 31 days after January 6, 2015, and the petition for review was docketed as filed on February 6, 2015. While the Department has not asserted that the petition for review was untimely, failure to timely appeal is a jurisdictional defect that cannot be waived and may be raised *sua sponte* by this Court. *Day v. Civil Service Commission of Borough of Carlisle*, 931 A.2d 646, 651-52 (Pa. 2007); *Szabo v. Commonwealth*, 93 A.3d 919, 921 n.3 (Pa. Cmwlth. 2014). However, although this Court's docket indicates that the Department's order exit date was January 6, 2015 and that appeal deadline ran from January 6, 2015, Petitioners have alleged that the Department's order was sent to them postmarked January 7, 2015. (Petition for Review ¶7; Amended Petition for Review ¶7.) Because it does not appear that the documents necessary to determine the accuracy of Petitioner's claim are in the record or file and this issue has not been briefed, we do not rest our dismissal of the petition for review on untimeliness grounds. *See Szabo*, 93 A.3d at 921 n.3.

7

*Commission v. State Civil Service Commission (Taccone)*, 789 A.2d 839, 847 (Pa. Cmwlth. 2002).

We conclude that none of Petitioners has standing. Petitioners are all alumnae of Wilson who graduated over 30 years before the events at issue here. They are not themselves directly affected by whether Wilson is coeducational, as they no longer are enrolled in Wilson or residing or taking classes on its campus, nor do they teach or work at Wilson. As Petitioner Hopkins stated at the public hearing, Petitioners "have absolutely nothing to gain personally" from their efforts to keep Wilson a single-sex college. (R. at 106, H.T. at 68.) An individual's status as a graduate of an educational institution does not give her standing to challenge changes in the educational institution's practices, structure or governance in court. *In re Milton Hershey School*, 911 A.2d 1258, 1261-63 (Pa. 2006) (association of alumni of school for orphan children lacked standing to challenge alleged improprieties in administration of school); *see also Russell v. Yale University*, 737 A.2d 941, 944-46 (Conn. App. 1999) (divinity school alumni lacked standing to challenge reorganization of divinity school); *Corporation of Mercer University v. Smith*, 371 S.E.2d 858, 859-61 & n.7 (Ga. 1988) (alumni of women's college had no standing to challenge merger of college into coeducational university and closure of its campus), *abrogated on other issue by Warren v. Board of Regents of University System of Georgia*, 527 S.E.2d 563 (Ga. 2000); *Steeneck v. University of Bridgeport*, (Conn. Super., No. CV 93 0133773, filed Aug. 18, 1994), 1994 WL 463629 at *1, *6 (university alumni lacked standing to challenge university's entry into loan agreement that gave other nonprofit corporation right to select 60 % of university's trustees), *aff'd*, 668 A.2d 688 (Conn. 1995); *Committee to Save Polytechnic University v. Board of Trustees of Polytechnic University*, 880

8

N.Y.S.2d 871 (N.Y. Sup., No. 7454–08, filed Jan. 30, 2009), 2009 WL 222097 at *1-*6 (alumni of university lacked standing to challenge state's approval of changes to university's charter to permit merger or consolidation into other university); *Leach v. Nichol*, (E.D. Va., No. 4:07cv12, filed May 29, 2007), 2007 WL 1574409 at *1-*3 (alumnus lacked standing to challenge college's change in practices concerning its chapel), *aff'd*, 256 Fed. Appx. 612 (4th Cir. 2007).

While Petitioners' attachment to Wilson is real, the ties and devotion that alumnae feel for their alma mater are not the type of actual, direct interest necessary to confer standing. *In re Milton Hershey School*, 911 A.2d at 1263 ("intensity of concern is real and commendable, but it is not a substitute for an actual interest," and "[s]tanding is not created through the [Alumni] Association's advocacy or its members' past close relationship with the School"); *Russell*, 737 A.2d at 946 (fact that alumni had made donations to divinity school and were sincere in their efforts on behalf of the divinity school was not sufficient interest to give them standing); *Committee to Save Polytechnic University*, 2009 WL 222097 at *4 (alumni's "donation of time, money and effort to [the university] and investing pride in it simply are not enough to confer standing to sue," and "the desire to see one's alma mater remain an autonomous educational institution does not itself represent a legally cognizable interest"); *see also In re Barnes Foundation*, 74 A.3d 129, 133-35 (Pa. Super. 2013) (individual who had studied at art foundation did not have an "interest different from that held by other members of the general public" and therefore lacked standing to challenge its move to a new location, despite his "special knowledge" of the art foundation). To the extent that Petitioners claim that they have made charitable contributions to Wilson, that, too, is insufficient for standing. The donation of funds or property to a charitable

9

institution, not given in trust, does not give the donor standing to challenge the institution's governance or changes to its practices. *In re Foundation for Anglican Christian Tradition*, 103 A.3d 425, 430-32 (Pa. Cmwlth. 2014) (*en banc*); *Russell*, 737 A.2d at 946; *Committee to Save Polytechnic University*, 2009 WL 222097 at *4. Moreover, any adverse effect of Wilson's change to a fully coeducational institution on the value of the degrees that Petitioners received more than 30 years earlier is purely speculative. *See Steeneck*, 1994 WL 463629 at *6 (because alumni have already received their degrees, injury from university's alleged loss of academic reputation is speculative and therefore cannot support standing). A speculative or remote possibility of harm is insufficient to support standing. *Pittsburgh Palisades Park, LLC v. Commonwealth*, 888 A.2d 655, 659-61 (Pa. 2005); *Bankers Life & Casualty Co. v. Unemployment Compensation Board of Review*, 750 A.2d 915, 918-19 (Pa. Cmwlth. 2000).

The fact that Petitioners Van Ness, Behm and Tishok are former members of Wilson's board of trustees and are "Everitt-Pomeroy Trustees" likewise does not give them standing to appeal the Department's approval of Wilson's amendment of its Articles of Incorporation. None of Petitioners is a current Wilson trustee or was a Wilson trustee at any time that she sought to participate in these proceedings. Although Petitioner Tishok was a member of Wilson's board of trustees at the time of its decision to make Wilson fully coeducational, she resigned from that position in May 2013, before the Department published its notice and before any protests or requests for intervention or limited participation were filed in this matter. (R. at 134-36, H.T. at 96-98; R. at 368, 12/11/13 Tishok Letter.) Standing must exist at the time of and throughout the legal proceeding; a past interest that is no longer affected cannot confer standing.

10

*Realen Valley Forge Greenes Associates v. Upper Merion Township Zoning Hearing Board*, 941 A.2d 739, 743 (Pa. Cmwlth. 2008) (person seeking to intervene in proceeding must have standing at time intervention is sought, intervention in land use matter was properly denied for lack of standing where party no longer owned the property at issue); *Gordon v. Philadelphia County Democratic Executive Committee*, 80 A.3d 464, 470-73 (Pa. Super. 2013) (claim properly dismissed for lack of standing where plaintiff no longer had adversely affected direct interest at time of dismissal); *In re Barnes Foundation*, 661 A.2d 889, 894-95 (Pa. Super. 1995) (suspended student of art foundation lacked standing because he "was not a student of the Foundation at any point during the pendency of this litigation").

Petitioners Van Ness, Behm and Tishok's positions as "Everitt-Pomeroy Trustees" do not give them any power to vote on matters before Wilson's board of trustees and do not make them members of the board of trustees. (R. at 414-15, Wilson By-Laws, Art. II, Art. III § 2.) Nonvoting, honorary trustees of an educational institution do not have responsibility for management of the institution's affairs and therefore lack a sufficient actual and direct interest to having standing to challenge the institution's actions. *Steeneck v. University of Bridgeport*, 668 A.2d 688, 690, 693-97 (Conn. 1995) (nonvoting "life trustee" of university lacked standing to challenge university's entry into loan agreement that gave other nonprofit corporation right to select 60% of university's trustees).[3]

---

[3] The situation in this case is substantially different from the 1979 suit over the closure of Wilson, where the court held that there were plaintiffs with standing to challenge the board of trustees' decision. In the 1979 case, the plaintiffs included a trustee and a faculty member and students who were directly and personally adversely affected by the closure. (R. at 431-32, *Zehner v. Alexander* Opinion.) The court held that the trustee and faculty member plaintiffs had standing, and its statement that the alumnae plaintiffs also had standing is therefore *dicta*. (R. at **(Footnote continued on next page…)**

11

Petitioners' argument that the Department waived its right to challenge their standing is without merit. The Department did not grant Petitioners party status or conclude that they had standing to seek disapproval of Wilson's amendment of its Articles of Incorporation. Rather, it granted Petitioners limited participant status to allow them to provide information, comment and argument to the Department, and specifically denied them party status. (R. at 370, 11/27/13 Department Letter; R. at 362-63, 12/11/13 Department Email.) The fact that the Department concluded that Petitioners should be allowed to provide information that could aid the Department in its decision in no way constitutes a determination that Petitioners had a direct, legally cognizable interest sufficient to permit them to seek judicial relief in this matter.

For the reasons set forth above, we conclude that Petitioners lack standing to appeal the Department's approval of Wilson's amendment of its Articles of Incorporation. Accordingly, this petition for review must be dismissed.

_____
JAMES GARDNER COLINS, Senior Judge

---

**(continued…)**
458, *Zehner v. Alexander* Opinion.) Moreover, any holding that the alumnae had standing is inconsistent with the Supreme Court's decision in *In re Milton Hershey School*, and is no longer good law.

12

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Paula S. Tishok, Gretchen Van Ness,  :
Kendal L. Hopkins, and Melissa Behm,  :
  :
        Petitioners  :
  : No. 136 C.D. 2015
      v.  :
  :
Department of Education,  :
  :
        Respondent  :

# **O R D E R**

AND NOW, this 4th day of February, 2016, Petitioners' Petition for Review seeking to appeal the January 6, 2015 final order of the Department of Education in the above-captioned matter is DISMISSED for lack of standing.

_____
JAMES GARDNER COLINS, Senior Judge