J-A26019-18

2019 PA Super 120

| | | |
|---|---|---|
| IN RE: TRUST UNDER AGREEMENT OF PAULINE O. WALKER DATED JULY 17, 2001, AS AMENDED JUNE 9, 2014 | : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: KATHERINE W. BANTLEON AND ELIZABETH W. MECKE | : : : | No. 262 WDA 2018 |

Appeal from the Order Entered February 16, 2018
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s):  No. 04034 of 2016

BEFORE:  BENDER, P.J.E., SHOGAN, J., and MURRAY, J.

OPINION BY SHOGAN, J.:                              **FILED APRIL 22, 2019**

Appellants, Katherine W. Bantleon and Elizabeth W. Mecke ("Daughters"), appeal from the order denying their objections to the first and final account filed by Smithfield Trust Company ("Appellee") in this matter pertaining to the trust created by their mother, Pauline O. Walker ("Decedent").[1] Because we conclude that Appellants lack standing, we affirm.

Decedent was a real estate agent.  In July of 2001, Decedent funded a revocable trust and designated Appellee as trustee.  Initially, the beneficiary of the trust upon Decedent's death was to be her probate estate.  In June of

---

[1] Daughters have filed an "Appellants' application to quash Appellee's challenge to standing," which is set forth in Section V of the argument portion of Appellee's brief.  Appellee's Brief at 59-66.  For the reasons set forth in this Opinion, we deny Daughters' application to quash.

2014, Decedent amended the trust documents to provide that the remaining trust assets were to be split equally between Daughters.

Beginning in late 2003, Appellee diversified the trust assets to include illiquid investments in private limited partnerships, and the investments were categorized as high-risk. Shareholders of Appellee also invested in the private offerings. Ultimately, the trust invested in thirty-eight limited partnerships for a total of approximately $1.8 million.

Decedent died on March 30, 2015. On November 4, 2015, trust assets were distributed to Daughters. On August 5, 2016, Appellee filed a first and final account to finalize administration of the trust. On September 16, 2016, Daughters filed objections in their capacity as beneficiaries of the estate. In their objections, Daughters claimed that Appellee breached its duty as trustee by investing in certain private limited partnerships. The estate was closed on September 26, 2016. Appellee filed preliminary objections challenging Daughters' standing with regard to the trust. The preliminary objections were denied. Appellee then filed an answer and new matter.

On November 28, 2017, Daughters sought to amend their original objections to include a new claim under the Pennsylvania Unfair Trade Practice and Consumer Protection Law and to add the estate as a party-plaintiff.[2]

_____

[2] In their motion to amend the objections, Daughters stated, "The [September 16, 2016] Objections filed by [Daughters] set forth a cause of action for breach of trust and derive from [Appellee's] action vis-à-vis the [Decedent's]

Daughters had filed a separate action in the Court of Common Pleas Civil Division raising the same unfair trade practice claim and listing the estate as a party-plaintiff. Daughters sought to merge that action with the action in orphans' court, but a judge in the civil division denied their request. Daughters' subsequent request to amend the original objections was denied on December 18, 2017. A five-day trial began on January 29, 2018, following which the trial court overruled Daughters' objections by order dated February 16, 2018. This appeal by Daughters followed. Daughters and the trial court complied with Pa.R.A.P. 1925.

Daughters present the following issues for our review:

I. WHETHER THE LOWER COURT ERRED WHEN IT DETERMINED THAT [APPELLEE] SATISFIED ITS FIDUCIARY OBLIGATIONS?

A. WHETHER THE LOWER COURT ERRED WHEN IT IGNORED THE DISCRETIONARY AUTHORITY GRANTED BY THE TRUST INSTRUMENT?

B. WHETHER THE LOWER COURT ERRED IN APPLYING THE INCORRECT BURDEN OF PROOF TO [DAUGHTERS]?

II. WHETHER THE LOWER COURT ERRED WHEN IT DETERMINED [DAUGHTERS] FAILED TO PROVE BREACH OF TRUST?

A. WHETHER THE LOWER COURT ERRED WHEN IT DETERMINED [APPELLEE] DID NOT VIOLATE ITS DUTY OF LOYALTY TO [DECEDENT] AND DID NOT ENGAGE IN SELF-DEALING?

---

Revocable Trust." Motion for Leave to File Amended Objections, 11/28/17, at 3, ¶ 2.

B. WHETHER THE LOWER COURT ERRED WHEN IT DETERMINED [APPELLEE] DID NOT VIOLATE ITS DUTY OF PRUDENCE TO [DECEDENT]?

C. WHETHER THE LOWER COURT ERRED WHEN IT DETERMINED [DECEDENT] PROVIDED INFORMED CONSENT?

III. WHETHER THE LOWER COURT ERRED IN ITS DENIAL OF [DAUGHTERS'] EVIDENCE THAT SUPPORTS A FINDING OF BREACH OF TRUST?

A. WHETHER THE LOWER COURT ERRED IN DENYING [DAUGHTERS'] MOTION IN LIMINE PURSUANT TO THE DEAD MAN'S ACT?

B. WHETHER THE LOWER COURT ERRED WHEN IT DISQUALIFIED [DAUGHTERS'] EXPERT WITNESS?

Daughters' Brief at 4-5.

Before we address the issues presented by Daughters, we are compelled to consider the final argument presented by Appellee because of its dispositive nature. In its final issue Appellee argues that Daughters lack standing to pursue this appeal. Appellee's Brief at 59-66. We agree.

Because our determination of whether an individual has standing to commence an action is a question of law, our scope of review is plenary. *In re T.J.*, 739 A.2d 478, 481 (Pa. 1999). It is axiomatic that:

> [i]n Pennsylvania, a party seeking judicial resolution of a controversy "must establish as a threshold matter that he has standing to maintain the action." *Fumo v. City of Philadelphia*, 972 A.2d 487, 496 (Pa. 2009). . . . "The core concept of standing is that a person who is not adversely affected in any way by the matter he seeks to challenge is not aggrieved thereby and has no standing to obtain a judicial resolution to his challenge." *Id*. (citing *Wm. Penn Parking Garage*[*, Inc. v. City of Pittsburgh*,] 346 A.2d [269,] 280-[2]81 [Pa. 1975)]).

- 4 -

*Johnson v. Am. Std.*, 8 A.3d 318, 329 (Pa. 2010). Thus, the inquiry into standing ascertains whether a party is the proper party entitled to make the legal challenge to the matter involved. *In re Trust Under Agreement of Keiser*, 572 A.2d 734, 736 (Pa. Super. 1990). A person who has no stake in the matter has no standing to obtain judicial resolution of his challenge to the matter. *Id*. Moreover, we observe the Commonwealth Court, our sister appellate court, has aptly noted that "[s]tanding must exist at the time of and throughout the legal proceeding; …." *Tishok v. Department of Education*, 133 A.3d 118, 124 (Pa. Comm. 2016).[3]

We are mindful that Section 7781 of the Uniform Trust Act defines a breach of trust as follows: "A violation by a trustee of a duty the trustee owes to a beneficiary is a breach of trust." 20 Pa.C.S. § 7781. In addition, Section 7783, which addresses damages in the absence of a breach, states "Absent a breach of trust, a trustee is not liable to a beneficiary for a loss or depreciation in the value of trust property or for not having made a profit." 20 Pa.C.S. § 7783(b). Section 7753 of the Uniform Trust Act articulates the duties of the trustee with regard to a revocable trust, and provides: "Regardless of the legal capacity of the settlor, the rights of the beneficiaries are subject to the control

---

[3] "Although decisions of the Commonwealth Court are not binding on this Court, we may rely on them if we are persuaded by their reasoning." *NASDAQ OMX PHLX, Inc. v. PennMont Secs.*, 52 A.3d 296, 308 n.7 (Pa. Super. 2012)

of, and the duties of the trustee are owed exclusively to, the settlor while a trust is revocable." 20 Pa.C.S. § 7753(a).

Furthermore, the "Uniform Law Comment" to Section 7753 states, in relevant part, that:

> This section recognizes that the settlor of a revocable trust is in control of the trust and should have the right to enforce the trust.
>
> * * *
>
> Typically, the settlor of a revocable trust will also be the sole or primary beneficiary of the trust, and **the settlor has control over whether to take action against a trustee for breach of trust**. … Following the death or incapacity of the settlor, the beneficiaries would have a right to maintain an action against a trustee for breach of trust. However, **with respect to actions occurring prior to the settlor's death or incapacity, an action by the beneficiaries could be barred by the settlor's consent or by other events such as approval of the action by a successor trustee**. For the requirements of a consent, see [20 Pa.C.S. § 7789].

20 Pa.C.S. § 7753 (Uniform Law Comment) (emphases added). In addition, we observe the comment to Section 7753 offered by the Joint State Government Commission notes that "Subsection (a) places a revocable trust on the same footing as a will, under which no beneficial interest is effective until the testator's death." 20 Pa.C.S. § 7753 (Jt. St. Govt. Comm. Comment).

We are also mindful that the powers of a settlor of a revocable trust are discussed in Section 74 of The Restatement (Third) of Trusts, which provides, in part, as follows:

**§ 74 Effect of Power of Revocation**

(1) While a trust is revocable by the settlor and the settlor has capacity to act:

(a) The trustee

* * *

(ii) may comply with a direction or act in reliance on an authorization of the settlor although the direction or authorization is contrary to the terms of the trust or the trustee's normal fiduciary duties, even if the direction or authorization is not manifested in a manner by which the settlor could properly amend or revoke the trust.

(b) The rights of the beneficiaries are exercisable by and subject to the control of the settlor.

Restatement (Third) of Trusts § 74(1).

Comment a to Section 74 addresses the scope of the section and provides, in part, as follows:

This Section deals with situations in which a person currently has, by reason of a power of revocation … the equivalent of ownership of the trust property, even though the legal title to the property is held by the trustee. A power of this type allows the trust property to be taken by and vested personally in the settlor or other holder (the "donee") of the power, thereby eliminating all interests of other beneficiaries.

Restatement (Third) of Trusts § 74, cmt. a.

Further, Comment b to Section 74 states, in part:

A trustee is not liable to the beneficiaries for a loss that results from compliance with a settlor's direction in accordance with the terms of that direction. The trustee remains subject to fiduciary duties, however, and thus has potential liability, with respect to those aspects of the directed conduct that are not prescribed by the terms of the settlor's direction. Thus, if the

settlor of a revocable trust simply directs the trustee to sell certain real property held in the trust, the trustee must, for example, act with prudence in arranging the price and other terms of the sale.

Restatement (Third) of Trusts § 74, cmt. b.

Comment c provides in part as follows:

Subsection (1)(a)(ii) is essentially an extension of the rule of beneficiary consent in § 97. (Cf. Comment d, below.) The justification here for allowing (without requiring) compliance with an informal direction by the settlor of a revocable trust, or for allowing action in reliance on the settlor's informal authorization, is that such conduct by a trustee, particularly by a family member, friend, or other inexperienced trustee, is not unreasonable. Therefore, if action has been taken under such circumstances, the trustee should not be denied the above-described degree of consent-based protection from liability merely because of the lack of formality. (See § 97.) As a practical matter, however, in the event of a surcharge action, the trustee does run a risk in relying on unwritten evidence to support a defense based on settlor direction or authorization.

Restatement (Third) of Trusts § 74, cmt. c.

Comment d further explains, in part:

[S]ettlors who hold powers of revocation may and often do consent to accountings by trustees or, via accountings or otherwise, approve prior acts that might or do constitute a breach of trust, thereby binding all beneficiaries and relieving the trustee of liability to them.

Restatement (Third) of Trusts § 74, cmt. d.

The above cited authority plainly provides that a trustee's duty inures solely to the benefit of the settlor of a revocable trust during the settlor's lifetime. Moreover, a settlor may ignore a breach of trust, which precludes action on the part of the remainder beneficiaries. Accordingly, we proceed with our analysis with these concepts in mind.

Our review of the record reflects that Decedent created the instant revocable trust on July 17, 2001, and Appellee was designated as the trustee. Trust Agreement, 7/17/01, at 1. Beginning on November 18, 2003, and continuing until December 9, 2014, Appellee acquired for the trust interests in a limited partnership known as Sea Venture. First and Final Account, 8/5/16, at 92-96. During that period, there were over forty separate purchases of limited partnership interests in Sea Venture products at prices ranging from $25,000 to $100,000 per unit. *Id*.

The record further reflects that Daughter Mecke testified at trial and indicated her belief that Decedent was capable of understanding the nature and risks involved with alternative investments, such as the limited partnership interests. N.T., 1/29/18-2/2/18, at 619-620. Daughters have admitted that "[they] are not aware of any facts which suggest that [Decedent] was unaware of the revocable trust acquisition of the limited partnership interests." *Id*. at 614. In addition, Daughters have conceded that Appellee did interact with Decedent as to investments and distributions. *Id*. Daughters also admitted that Appellee provided Decedent with monthly account statements detailing the investments held in her revocable trust as well as the performance of such investments.[4] *Id*. Monthly letters were also

---

[4] Copies of those account statements were admitted as Joint Exhibit 39.

sent by Appellee to Decedent addressing the various investments in the trust. Joint Exhibit 38. Decedent died on March 30, 2015.

It is undisputed that, as trustee of the revocable trust, Appellee owed a duty to Decedent during her lifetime and Daughters' rights as beneficiaries were subject to Decedent's control. 20 Pa.C.S. § 7753(a); Restatement (Third) of Trusts § 74(1). As illustrated above, all of the investments, which Daughters allege resulted in a breach of duty by Appellee, occurred during Decedent's lifetime. The record further indicates that Decedent consented to and approved the investments made by Trustee. Decedent's acquiescence to the investments made by Appellee was binding upon Daughters and relieved Appellee of liability to them. Restatement (Third) of Trusts § 74, cmt. d. This consent by Decedent is a bar to the action on the part of Daughters because they are not aggrieved by Appellee's conduct as trustee. 20 Pa.C.S. § 7753. Hence, Daughters, as beneficiaries, are not the proper parties to present the legal challenge to the matter involved. *In re Trust Under Agreement of Keiser*, 572 A.2d at 736. Therefore, we affirm the order of the trial court, albeit on other reasons. Indeed, this Court has the authority to affirm the trial court because of a lack of standing to pursue this appeal, even though the trial court decided the case on another ground. "[W]e are not bound by the rationale of the trial court and may affirm on any basis." *Richmond v. McHale*, 35 A.3d 779, 786 n.2 (Pa. Super. 2012).

Appellants' application to quash Appellee's challenge to standing is denied. Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/22/2019