J-A04030-23

2024 PA Super 80

| | | |
|---|---|---|
| SPIRITRUST LUTHERAN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WAGMAN CONSTRUCTION, INC. | : | No. 572 MDA 2022 |
| v. | : | |
| | : | |
| | : | |
| ALPHA CONSULTING ENGINEERS, | : | |
| INC., KEITH D. SMITH CONCRETE | : | |
| CONTRACTORS, INC., FITZ & SMITH, | : | |
| INC., KEYSTONE FOUNDATION | : | |
| REPAIR, INC., AND TRIAD | : | |
| ENGINEERING, INC. | : | |

Appeal from the Order Entered March 14, 2022
In the Court of Common Pleas of York County
Civil Division at No.: 2021-SU-000451

BEFORE: STABILE, J., DUBOW, J., and McCAFFERY, J.

OPINION BY STABILE, J.:                    **FILED: APRIL 23, 2024**

In this construction defect case, SpiriTrust Lutheran (SpiriTrust) alleged that in 2007, Wagman Construction, Inc (Wagman), negligently, and in breach of contractual duties, built defective retaining walls and other structures on its property.  Wagman responded that SpiriTrust's claims were barred by the statute of limitations, the gist of the action doctrine, and the economic loss doctrine.  Finding merit in those defenses, the Court of Common Pleas of York County (trial court) sustained Wagman's preliminary objections and granted judgment on the pleadings in its favor.  SpiriTrust now appeals the trial court's

rulings, and on review, we affirm in part, reverse in part, and remand the case for further proceedings.

SpiriTrust was previously known as Lutheran Social Services of South Central Pennsylvania (LSS), and it is the successor-in-interest to Hanover Lutheran Retirement Village, Inc. (Hanover Lutheran). *See* Amended Complaint, 5/17/2021, at ¶¶ 2-3, 8. In connection with the construction of a life plan community called the Village at Utz Terrace (the Village), located in Hanover, York County, Pennsylvania, SpiriTrust's predecessor, LSS, and Wagman entered into a contract on **October 10, 2001**. In doing so, the parties utilized a template document, the AIA A121/CMc-1991 "Standard Form of Agreement Between Owner and Construction Manager Where the Construction Manager is also the Contractor" (the A121). *Id.*, at ¶ 7.[1]

Under the A121, Wagman was to provide preconstruction and construction services for a portion of the project called the Independent Living Facility (The Facility). *Id.*[2] With respect to the project's construction phase, the A121 incorporated by reference another form document – the 1987 Edition of the AIA A201 General Conditions of the Contract. *See id*., at Exhibit 1.

_____

[1] "AIA" refers to The American Institute of Architects, which publishes numerous contract templates and form documents for use by architects, contractors, engineers, attorneys, owners and all other parties involved in a construction project. The contract templates and form documents may be revised as needed by the parties.

[2] Paragraph 7 in the Amended Complaint states that LSS was to provide these services. The A121 attached to the Amended Complaint, however, makes clear that Wagman, as the "Construction Manager," was to provide these services, not LSS.

Through subsequent amendments to expand the scope of services that Wagman was to provide, on June 9, 2005, the parties executed Amendment No. 4 to the A121, under which Wagman agreed to supply labor, material and equipment to construct "all site related development and infrastructure for all specified structures and site preparation for 76+/- independent living cottages (to be constructed as part of a separate agreement)[.]" *Id.*, at ¶ 9. Wagman's site preparation work under Amendment 4 included topsoil removal and replacement, as well as bulk excavation and compacted fill. *Id.*, at ¶ 10.

Thereafter, on **October 27, 2003**, Hanover Lutheran and Wagman entered into a second contract, utilizing the 1997 Edition of the AIA Document A111 ("Standard Form of Agreement Between Owner and Contractor where the basis of for payment is the COST OF THE WORK PLUS A FEE with a negotiated Guaranteed Maximum Price") (the A111). Pursuant to the A111, Wagman would serve as the general contractor in exchange for payment to construct the portion of the Facility known as "the Cottages." *Id.*, at ¶ 12.

On its first page, the A111 adopted by reference the **1997** Edition of the AIA A201 General Conditions of the Contract. *Id.*, at Exhibit 4. However, Section 15.1.2 of the A111 identifies the incorporated "Contract Documents" executed by the parties, and it refers specifically to the 1997 Edition of the A201, "***as revised.***" *Id*. (Emphasis in original).

On January 10, 2006, Hanover Lutheran and Wagman executed Amendment No. 4 to the A111, pursuant to which Wagman, in addition to constructing 12 cottages, was required, *inter alia*, to design and construct a

retaining wall in exchange for payment in the amount of $301,327. *Id.*, at Exhibit 5. This retaining wall, known as Wall 1, was one of several other retaining walls that Wagman also designed and constructed under the A111. *Id*., at ¶ 16. Walls 2 and 3 were to be built in the area of the Cottages, and they were also designed and constructed by Wagman under the A111. *Id*., at ¶ 17. By September 2007, Wagman had completed the Cottages portion of the project at the Village, including the construction of the retaining walls. *Id*., at ¶ 19.

Years later, on March 9, 2019, following the completion of the site work for the Cottages under the A121 contract (executed in 2001), and the construction of the Cottages and retaining walls under the A111 contract (executed in 2003), Wall 1 collapsed. *Id*., at ¶ 20. Because of the imminent danger posed by the incident, dozens of residents had to be relocated, and a security service had to be hired to monitor the area. *Id*., at ¶ 21.

It is not disputed that both the 1987 and 1997 Editions of the AIA form A201 each include a standardized provision that would make SpiriTrust's resulting claims against Wagman arbitrable.[3] SpiriTrust commenced arbitration proceedings on August 4, 2020, with the American Arbitration Association following the collapse of Wall 1. *See* Appellant's Brief, pp. 9-10.

_____

[3] At the time it was seeking arbitration, SpiriTrust's claims were only predicated on the 2003 A111 contract. The claims predicated on the 2001 A121 contract were not asserted until after SpiriTrust had withdrawn its demand to arbitrate the dispute with Wagman.

- 4 -

In response, Wagman petitioned the trial court to stay the arbitration, arguing that SpiriTrust could not establish the arbitrability of the case.

Wagman argued that since the A111 had incorporated the "*as revised* A201*,*" this evidenced the parties' intent not to agree to the terms of the standardized form A201-1997, precluding SpiriTrust from relying on the arbitration provision in the latter document. Due to Wagman's contention that SpiriTrust could not establish the existence of an arbitration agreement, and out of concern for the statute of limitations, SpiriTrust initiated this civil action by the filing of a *praecipe* for a writ of summons on March 2, 2021. It then filed its complaint on April 5, 2021, and withdrew its demand for arbitration.

In its original complaint, SpiriTrust asserted two counts against Wagman; one for breach of the A111 contract, and the other for negligence. SpiriTrust attached to the complaint the 1997 form A201 not specific to the project, stating that, despite an exhaustive search, it was unable to find the governing "*as revised* A201" contract addendum referenced in the A111. SpiriTrust stated in a footnote that it was unaware of any revisions to the A201 that were relevant to it claims. **See** Complaint, 4/5/2021, at ¶ 9, n.1.

On May 17, 2021, SpiriTrust filed an Amended Complaint, the subject of this appeal, alleging three causes of action against Wagman. In Count 1, SpiriTrust asserted that Wagman breached the 2001 A121 contract by failing to perform the site work in a reasonably workmanlike manner. The work was allegedly deficient because the reinforced soil material did not meet industry

standard gradation requirements, and the reinforced soil was not compacted to desirable unit weights. *See* Amended Complaint, 5/17/2021, at ¶ 38.

In Count II, SpiriTrust asserted that Wagman breached the 2003 A111 contract. SpiriTrust averred that pursuant to the A111, including under Amendment No. 4, Wagman had an obligation to design and construct certain retaining walls for the Project, and that it had architectural and structural design responsibilities consistent with the rest of all Wagman's work under the A111. *Id*., at ¶¶ 44-46. Specifically, SpiriTrust alleged that under the A111, Wagman did not construct the retaining walls in a reasonable workmanlike manner or in accordance with industry standards in the following ways:

(a) Wagman installed the geogrid, which is used to reinforce the soil between the masonry block layers of the retaining walls, perpendicular to the walls, resulting in retaining walls that had less than half the tensile strength of retaining walls having geogrid installed parallel to the walls;

(b) Wagman failed to install required granular drainage layers behind Wall 1;

(c) Wagman failed to install the geogrid in sufficient length and, in some locations, the geogrid exceeded standard vertical spacing;

(d) The reinforced soil material did not meet industry standard gradation requirements;

(e) The reinforced soil was not compacted to desirable unit weights; and

(f) Wagman failed to use the services of a licensed engineer in the design of the retaining walls.

*Id.* at ¶ 49(a)-(f).

At Count III, SpiriTrust asserted a claim of negligence against Wagman with respect to its work under the A111. Repeating the same specific allegations averred at paragraphs 49(a)-(f) from Count II, SpiriTrust alleged that Wagman breached its duty to design the retaining walls in a safe manner consistent with accepted engineering standards and industry practice by instead negligently designing the retaining walls, causing the collapse of Wall 1. *Id*., at ¶ 57.

Wagman filed preliminary objections in the nature of a demurrer, asserting two grounds. First, Wagman argued that Count III (Negligence) was barred because it was duplicative of SpiriTrust's breach of contract claims and rooted solely in Wagman's contractual duties. Second, Wagman argued that the negligence count was legally deficient because the asserted damages were all economic losses in nature, and therefore not recoverable in tort.

The trial court sustained the preliminary objections as to Count III (Negligence) in its order dated September 21, 2021, and the count was dismissed. The trial court filed a memorandum giving the reasons for its ruling which mirrored the grounds Wagman had raised. *See* Trial Court Memorandum, 9/21/2021, at 7-12.

Wagman later filed a motion for judgment on the pleadings as to Counts I and II of the Amended Complaint, asserting that the breach of contract claims were barred by the statute of limitations. The motion relied on the language contained in the A201 general conditions referenced in both the A121 and A111 contracts.

As stated above, the 2001 A121 contract was attached to the amended complaint, and it referenced, but did not include, the 1987 Edition of the AIA A201. Likewise, the 2003 A111 contract was attached to the amended complaint, and while the 1997 Edition of the AIA A201 was referenced in the form document, the parties specified otherwise that they had negotiated an "*as revised*" version of that form document which was to be included in the contract. This "*as revised* A201" was not attached to the amended complaint.

Section 13.7.1 of the 1997 Edition of the form A201, which was attached to SpiriTrust's original complaint, provides that any cause of action between the parties would begin to accrue on the date of the construction's "substantial completion." This provision is critical because Wagman indisputably completed all of its construction in 2007. If the substantial completion provision appeared within the respective A201 documents incorporated by the A111 and A121 contracts, then SpiriTrust's claims would be time-barred.[4] On the other hand, if Section 13.7.1 was revised to give another period for causes of action to accrue, then SpiriTrust would potentially be permitted to invoke an exception to the statute of limitations if one were applicable.[5]

---

[4] Construction was completed no later than 2007, and SpiriTrust's action was commenced in 2021, long after the expiration of the limitations periods for breach of contract claims (four years) and negligence claims (two years).

[5] SpiriTrust maintained, pursuant to "the discovery rule," that its claims did not begin to accrue until it could have reasonably discovered the latent defects in the construction. By SpiriTrust's reckoning, the statutory limitations period did not begin in 2007 at the time of the construction's substantial completion. *(Footnote Continued Next Page)*

Wagman construed SpiriTrust's original complaint as containing an admission as to Count II of the amended complaint that there were no material differences between the "*as revised* A201" and the standard form A201. Although SpiriTrust had attached the 1997 form A201 to its original complaint, it did so with the caveat that the form A201 was "not specific" to the construction projects in dispute. In a footnote, however, SpiriTrust stated that it was "not aware of any revisions to the [form] A201 that are relevant for purposes of this action." Complaint, 4/4/2021, at ¶ 9 fn.1. Wagman seized on this footnote as definitive proof that Section 13.7.1 had not been altered or removed from the "*as revised* A201."

SpiriTrust attempted to refute Wagman's interpretation of its original complaint in several ways. First, SpiriTrust stressed that the amended complaint had superseded the original complaint, making the averments in the latter pleading a nullity. Second, the only contracts mentioned in the amended complaint were the A111 and A121, which on their face contained no statute of limitations provisions. Third, no version of the A201 had been attached to, or referenced by, the amended complaint or any other operative pleading. Accordingly, SpiriTrust argued that Wagman could not rely on any

---

It instead began to run when Wall 1 collapsed on March 9, 2019, making the present action timely filed less than two years later, on March 3, 2021. Wagman asserts on appeal that SpiriTrust could not invoke the discovery rule because its amended complaint had not adequately pleaded the requisite facts. However, in its 1925(a) opinion, the trial court impliedly found that SpiriTrust had successfully invoked the discovery rule.

version of the A201 to establish as a matter of law that SpiriTrust's claims were barred as untimely.

SpiriTrust also asserted that Wagman had misread its footnote in the original complaint comparing versions of the A201. SpiriTrust explained that it only meant to state that the arbitration provision in the 1997 form A201 had not been removed during the parties' negotiated revisions with respect to the A111 contract. The original complaint was filed when the arbitrability of the case was still being disputed, and SpiriTrust equated two versions of the A201 to show that the "as revised" version contained the provision that allowed the case to be arbitrated.

In addition to their dispute over the content of the "*as revised* A201", the parties also differed as to the whether the document appeared in the record. SpiriTrust maintained that the "*as revised* A201" had been lost. Conversely, Wagman maintained that it had produced an "*as revised*" A201 during the prior litigation on its motion for judgment on the pleadings.

Wagman had relied on Exhibit B to its petition to stay arbitration, to which Wagman attached a string of documents that were collectively purported to be the "*as revised* A201" that had been incorporated by reference into the parties' A111 contract in 2003. The first document is titled, "Project Manual for Utz Terrace," and is dated as of March 3, 2005, about a year and a half after the A111 contract was executed. The designated project number on the document is "0127." Following the Project Manual was a form A201,

as well as yet another document titled, "Section 00800 – Supplementary Conditions."

The Supplementary Conditions ostensibly related to the terms of a form A201, indicating language to be added or omitted from the parties' agreement. They contained no additions or omissions with respect to the statute of limitations/substantial completion language in Section 13.7.1 of form A201. Wagman posited that the Project Manual, the form A201, and the Supplementary Conditions could be read together as constituting the "*as revised* A201," which retained Section 13.7.1 and rendered Count II of SpiriTrust's amended complaint untimely.

SpiriTrust responded that the documents identified by Wagman as the "*as revised* A201" were nothing of the sort. It argued that the A111 contract, executed in 2003 between Wagman and SpiriTrust's predecessor, Hanover Lutheran, enumerated in Article 15 the documents then in effect. This included the A111 itself, as well as the "*as revised* A201" contract. Immediately below that provision in the A111 contract, a section that reads, "The Supplementary and other Conditions of the Contracts," was crossed out and the spaces designated for that information were left blank.

The apparent non-existence of Supplementary Conditions in the A111 contract prompted SpiriTrust to argue that none of the documents introduced by Wagman could be the "*as revised* A201." **See** SpiriTrust's Answer to Petition and Application to Stay Arbitration, 3/31/2021, at 13-15. The Supplementary Conditions provided by Wagman (dated March 3, 2005) also

were not contemporaneous with the execution of the A111 contract on October 27, 2003.

SpiriTrust supported its contention further by presenting the affidavit of the vice-president of the firm that served as the architect for the construction projects at the Village – Michael Allen-Hall. He stated that the "Project Manual" identified by Wagman in its exhibit "did not apply to the project for the construction of the Cottages," which had included the design and construction of the retaining walls. *See id*., at Exhibit 1, ¶¶ 6-7. He also stated that the project number referenced in the Project Manual related to a different project involving the construction of apartments and a community center at the Village. *See id.*, at ¶ 4.

Despite the parties' disagreements as to the content and terms of their agreements, the trial court, on March 14, 2022, granted Wagman's motion for judgment on the pleadings as to both of SpiriTrust's breach of contract claims (Count I and Count II). In its 1925(a) opinion, the trial court did not acknowledge that an "*as revised* A201" appeared in the record. Rather, the trial court reasoned that SpiriTrust had admitted in its original complaint that the form A201 attached to the pleading was equivalent in all material respects to the controlling "*as revised*" version incorporated in the A111 contract. Further, since the form A201 contained a statute of limitations/substantial completion provision, and SpiriTrust had, in effect, conceded it applied, SpiriTrust would be precluded from raising an exception to the limitations period as a matter of law. *See* 1925(a) Trial Court Opinion, 5/13/2022, at 2-

3. Judgment on the pleadings was therefore granted as to Count II (breach of the 2003 A111 contract).

As a separate ground to support the granting of judgment on the pleadings for both Count I and Count II, the trial court opined that SpiriTrust had violated Pa.R.C.P. 1019(i), which requires a plaintiff to attach all contracts that are material to the claims. *See id*., at 5. SpiriTrust had attached the A111 and the A121 to its amended complaint, but both of those contracts had incorporated by reference an A201 document which had been omitted from the pleadings. *See id*.

Notwithstanding its ruling that Count II of SpiriTrust's complaint was barred by the statute of limitations period under Section 13.7.1 of the "*as revised* A201," the trial court went on to discuss the inapplicability of the discovery rule exception to the statute of limitations. The trial court suggested that SpiriTrust could have discovered the alleged defects in the retaining walls prior to Wall 1's collapse in 2019 by hiring an outside engineering firm during the construction or any time after the walls were completed. *See id*., at 8. As to the site work, the trial court reasoned that, in addition to hiring experts to evaluate the area, the alleged defects were discoverable since 2007 because they were all "clearly visible." *Id*., at 8-9.

SpiriTrust timely appealed from both the order granting judgment on the pleadings, as well as the order sustaining preliminary objections. In its brief, SpiriTrust now raises four issues for our consideration:

1. Whether the Trial Court erred in granting Wagman's Motion for

Judgment on the Pleadings as to breach of the A111 contract (Count II of the Amended Complaint) where Wagman relied exclusively on a provision in the form A201-1997 document, and not the "as revised" A201-1997 document that was part of the A111 contract, which "as revised" document was not part of pleadings, and thus, the Trial Court made an improper and unsupported assumption as to the content of the "as revised" A201-1997 document.

2. Whether the Trial Court erred in granting Wagman's Motion for Judgment on the Pleadings as to Counts I and II of the Amended Complaint where SpiriTrust commenced its claims within the applicable statutes of limitations following SpiriTrust's discovery of Wagman's defective design and construction of the retaining walls after the collapse of Wall 1 on March 9, 2019.

3. Whether the Trial Court erred in relying on the gist of the action doctrine to sustain Wagman's Preliminary Objection to SpiriTrust's professional negligence claim (Count III of the Amended Complaint), which claim is premised upon Wagman's breach of its professional obligations to design the retaining walls in accordance with accepted engineering standards.

4. Whether the Trial Court erred in relying on the economic loss doctrine in sustaining Wagman's Preliminary Objection to SpiriTrust's professional negligence claim (Count III of the Amended Complaint), which claim is premised upon Wagman's breach of its professional obligations to design the retaining walls in accordance with accepted engineering standards, and which claim alleged damage to real property in addition to economic damages.

Appellant's Brief, at 6-7 (suggested answers omitted).

With respect to SpiriTrust's first two claims regarding the trial court's entry of judgment on the pleadings, our standard of review is *de novo* and our scope of review is plenary. *See Grabowski v. Carelink Cmty. Support Servs., Inc.*, 230 A.3d 465, 470 (Pa. Super. 2020). Judgment on the pleadings should be granted where there are no disputed issues of material

- 14 -

fact, and the defendant is entitled to judgment as a matter of law. ***See id*.**; ***see also*** Pa.R.Civ.P. 1034. All well-pleaded allegations in the plaintiff's operative complaint are accepted as true. ***See Okeke-Henry v. SW. Airlines, Co.***, 163 A.3d 1014, 1016–17 (Pa. Super. 2017).

SpiriTrust's first claim is that the trial court erred in granting judgment on the pleadings as to Count II of the amended complaint (breach of the 2003 A111 contract) because the ruling resolved a disputed question of fact regarding the content of the "*as revised*" version of the A201 contract – a document which SpiriTrust argues was not part of the record. It is undisputed that SpiriTrust did not attach any version of the A201 to the amended complaint, which is the operative pleading under review. The trial court nonetheless inferred that the "*as revised* A201" precluded SpiriTrust's breach claim in Count II based on a perceived admission to that effect in the original complaint.

We agree with SpiriTrust that its original complaint is of no moment because it became a nullity once the amended complaint was filed. "It is settled law in this Commonwealth that the filing of an 'amended complaint has the effect of ***eliminating*** the prior complaint.'" ***Avery v. Cercone***, 225 A.3d 873, 882 (Pa. Super. 2019) (quoting ***Hionis v. Concord Tp.***, 973 A.2d 1030, 1036 (Pa. Cmwlth. 2009) (emphasis in original). All pleadings in a complaint preceding an amendment become "***null and void*** for purposes of the Rules of Civil Procedure." ***Id***., at 883 (emphasis added). The trial court therefore

erred as a matter of law in attributing the averments of the original complaint to SpiriTrust because that pleading was eliminated by the amended complaint.[6]

Compounding that error, the trial court granted judgment on the pleadings as to Count I and Count II based upon a finding that SpiriTrust violated Pa.R.C.P. 1019(i). This rule requires a pleader to attach a copy of a writing when a claim or defense is based upon it. **See** Pa.R.C.P. 1019(i). When the writing is not accessible, the pleader must "so state, together with the reason, and . . . set forth the substance in writing." **Id**. There is no dispute here that SpiriTrust did not attach to its pleadings the 1987 Edition of the AIA A201 incorporated by the A121 (Count I); nor did it attach the "*as revised* A201" incorporated by the A111 (Count II).

It is significant, however, that Wagman did not file a preliminary objection asserting that SpiriTrust's amended complaint was in non-conformity with Pa.R.C.P. 1019(i). The trial court apparently raised the defect for the first time, *sua sponte*, in its 1925(a) opinion as a belated reason for affirmance. **See** Trial Court 1925(a) Opinion, 5/13/2022, at 5. "Under the Rules and case law, it is clear that matters not raised in preliminary objections may not be considered by the court *sua sponte*." **MacGregor v. Mediq Inc.**,

---

[6] Our disposition makes it is unnecessary for us to determine whether the footnote in the original complaint was misconstrued by the trial court. The amendment of that pleading made it improper for the trial court to construe it in *any* context.

576 A.2d 1123, 1128 (Pa. Super. 1990) (citing Pa.R.Civ.P. 1032). Thus, we are not persuaded that this is a viable ground to justify the affirmance of the trial court's order granting judgment on the pleadings as to Count I and Count II.[7]

We now turn to the sub-issue not directly addressed in the trial court's 1925(a) opinion. SpiriTrust argues, as to Count II, that the trial court erred in relying on the terms of the form A201 or the "*as revised* A201," because the former contract addendum was not controlling, and the latter was not part of the record. Wagman contends, however, that the order granting judgment on the pleadings as to Count II should be affirmed because Wagman attached the "*as revised* A201" to its filings in this case, making the contract's statute of limitations provision part of the certified record.

As a general matter, a defendant may have the trial court consider parts of a contract that the plaintiff referred to, but did not attach, to a pleading. *See Satchell v. Ins. Placement Fac. Of Penn.*, 361 A.2d 375, 377 (Pa. Super. 1976). SpiriTrust indirectly mentioned the "*as revised* A201" in its amended complaint because that document was incorporated by reference in a document SpiriTrust *did* attach, the A111 contract, which was the basis of the breach of contract claim in Count II. An instrument that forms "the very

---

[7] SpiriTrust asserts in its brief that it did not violate Pa.R.C.P. 1019(i) because no version of the A201 was material to its claims, which were instead based solely on the face of the A111 and A121 contracts.

foundation of the suits" is "properly considered by the court" where the plaintiff has averred its existence. ***Id***.

Wagman argues that the instrument at issue is composed of several documents collected within the "Project Manual" for the Village, the most significant of which is the "Supplementary Conditions," which purport to keep intact the limitations provisions in the form A201 contract. Wagman had initially attached these documents to its petition to stay arbitration. They were then made part of the certified record of this appeal when Wagman attached them to its reply to SpiriTrust's opposition to the motion for judgment on the pleadings. ***See Ritter v. Ritter***, 518 A.2d 319, 323 (Pa. 1986) ("[A]n appellate court can only consider the certified record on appeal when reviewing a case.").

Despite the obvious import of the language in the "*as revised* A201", Wagman's reliance on the Project Manual documents is problematic. To begin, the trial court declined to accept that Wagman had indeed submitted an "*as revised* A201" that relates to the construction of the subject cottages and retaining walls. The trial court's ruling (which we hold to be erroneous for the reasons above) was predicated solely on averments in SpiriTrust's original complaint and amended complaint. ***See*** 1925(a) Opinion, 5/13/2022, at 4.

In addition, it is not clear that that the Supplementary Conditions contained in the Project Manual are in fact what Wagman asserts them to be. The A111 contract executed by the parties in 2003 struck "Supplementary

Conditions" from its terms. The Project Manual also includes no signature page or any other indication that it represented a negotiated "*as revised* A201" that was incorporated into the A111. SpiriTrust also submitted an affidavit of the project's architect, stating that the Project Manual concerned work at the Village other than Wagman's construction of the cottages and retaining walls.

Since the parties presented conflicted evidence as to the nature of the Project Manual documents, their identity as the "*as revised* A201" poses a question of fact. The trial court and this Court must decline to determine such a fact when deciding the propriety of judgment on the pleadings, since there must be no remaining disputed questions of fact in order for judgment on the pleadings to be granted. ***See Grabowski***, 230 A.3d at 470.

We next consider SpiriTrust's claim that the trial court erroneously granted judgment on the pleadings as to Counts I and II based on the statute of limitations. That is, SpiriTrust contends that it invoked the discovery rule as to those counts, raising a question of fact as to the timeliness of its claims by asserting that they did not accrue until Wall 1 collapsed on March 9, 2019.

SpiriTrust's breach of contract claims are subject to a four-year statute of limitations that begins to accrue at the time of the breach. ***See*** 42 Pa.C.S.A. § 5525(a)(8). The negligence claim is subject to a two-year statute of limitations that likewise begins to accrue once the right to bring the claim arises. ***See*** 42 Pa.C.S.A. § 5524(7). The present case was not filed until

2021, over a decade after the alleged breaches of contract and negligent acts occurred, barring the claims under their respective limitations periods.

One exception is the discovery rule, which delays the running of the statute of limitations until the plaintiff "discovers, or reasonably should have discovered" the basis of the claim. *Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.*, 468 A.2d 468, 471 (Pa. 1983). "[T]he point at which the complaining party should reasonably be aware that he has suffered an injury is an issue of fact to be determined by the jury." *Miller v. Ginsberg*, 874 A.2d 93, 98 (Pa. Super. 2005); *see also Amodeo v. Ryan Homes, Inc.*, 595 A.2d 1232, 1236 (Pa. Super. 1991) (same).

There are two ways for a plaintiff to assert the discovery rule: (1) by pleading sufficient facts in the complaint, or (2) by raising the discovery rule in response to the defendant's statute of limitations defense. *Prevish v. Northwest Med. Ctr. Oil City Campus*, 692 A.2d 192, 197 (Pa. Super. 1997) (citing *Fox v. Byrne*, 525 A.2d 428 (Pa. Super. 1987)). Either way, the plaintiff must allege facts showing plaintiff's lack of prior knowledge regarding the nature of the alleged injury, and why plaintiff could not have learned of it at an earlier point. *See Coyne v. Porter-Hayden Co*., 428 A.2d 208, 210 (Pa. Super. 1981).

Here, in granting judgment on the pleadings as to Count II, the trial court first relied on the enforceability of the statute of limitations provision in

the "*as revised* A201." **See** Trial Court Opinion, 5/13/2022, at 5-8.[8] Having found that the claim already was barred, the trial court further determined that SpiriTrust could not satisfy the discovery rule as to Count I and Count II because the construction defects alleged therein could have been discovered at an earlier time. It was suggested by the trial court that the asserted defects were readily apparent, and that SpiriTrust would have immediately discovered them at any point after the completion of construction in 2007 by hiring an outside engineering firm to evaluate Wagman's work. **See id**., at 8-9.

SpiriTrust did not plead that the asserted defects were detectible to the naked eye as the trial court found. Nor does invocation of the discovery rule require the plaintiff to have hired an engineering firm within the limitations period. Wagman does not attempt to defend this portion of the trial court's ruling, much less provide any legal authority in support of it. **See** Brief of Appellee, at 39-48.

We likewise are unable to conclude that the trial court's factual determinations were appropriate at the pleading stage. It is well established that "the point at which the complaining party should reasonably be aware that he has suffered an injury is a factual issue 'best determined by the collective judgment, wisdom and experience of jurors.'" **White v. Owens−**

---

[8] The trial court granted judgment on the pleadings as to Count II based on the "*as revised* A201." The trial court did not rely on the "*as revised* A201" as to Count I, instead citing only a violation of Pa.R.C.P. 1019(i). **See** Trial Court 1925(a) Opinion, 5/13/2022, at 5.

*Corning Fiberglas Corp.*, 668 A.2d 136, 144 (Pa. Super. 1995) (quoting *Petri v. Smith*, 453 A.2d 342, 347 (Pa. Super. 1982)).

Instead of attempting to justify the trial court's factfinding, Wagman instead pivots to the sufficiency of SpiriTrust's pleadings with respect to the discovery rule. The pleadings do not adequately invoke the discovery rule in Wagman's view because SpiriTrust did not state its lack of prior knowledge regarding the nature of the alleged construction defects, and why it could not have learned of the defects at an earlier point.

While SpiriTrust could have given more detail as to its lack of knowledge prior to the filing of its action, we decline to affirm the trial court's order on Wagman's belated ground. Wagman did not assert such a pleading deficiency in its preliminary objections, and SpiriTrust was never given to understand that its claim needed to be amended in that regard. Moreover, as evidenced by the reasoning in its 1925(a) opinion, the trial court presumed that SpiriTrust's pleadings were adequate to invoke the discovery rule exception.

In sum, there remained questions of fact as to whether the "*as revised A201*" incorporated into the 2003 A111 contract contained a provision that would bar the discovery rule and render Count II untimely. Alternatively, SpiriTrust's invocation of the discovery rule raised another question of fact as to when it could have reasonably learned about the asserted construction defects raised in Count I and Count II, and this too was a factual issue that

the trial court was not permitted to address. Thus, the trial court erred in granting judgment on the pleadings as to both Count I and Count II.

SpiriTrust's third claim is that the trial court erred in sustaining Wagman's preliminary objection as to Count III (Negligence). The trial court ruled that this count was precluded by the gist of the action doctrine, in that the substance of the negligence allegation was "integrally related to [the] breach of contract claims." Trial Court Memorandum, 9/22/2021, at 9. The ruling is erroneous according to SpiriTrust because, despite the heading of the count, it alleged a claim of "professional negligence," which concerns the breach of a different duty than that imposed by the parties' contractual obligations. SpiriTrust stresses that the count is independent of the grounds alleged in the breach of contract claims, such that the gist of action doctrine does not apply.

A preliminary objection in the nature of a demurrer tests the legal sufficiency of the pleading. **See** Pa.R.Civ.P. 1028(a)(4). The trial court's rulings on preliminary objections in the nature of a demurrer may be reversed on review only to correct "an error of law or abuse of discretion." **McNaughton Properties, LP v. Barr**, 981 A.2d 222, 224 (Pa. Super. 2009). This Court must "examine only the averments in the complaint, together with the documents and exhibits attached thereto, and the impetus of our inquiry is to determine the legal sufficiency of the complaint and whether the pleading would permit recovery if ultimately proven." **Id.** "If doubt exists concerning

whether the demurrer should be sustained, then 'this doubt should be resolved in favor of overruling it.'" *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 56 (Pa. 2014) (quoting *Bilt-Rite Contractors v. Architectural Studio*, 866 A.2d 270, 274 (Pa. 2005)).  The standard of review is *de novo*.  *Id*.

The gist of the action doctrine "precludes plaintiffs from re-casting ordinary breach of contract claims into tort claims."  *Mirizio v. Joseph*, 4 A.3d 1073, 1079 (Pa. Super. 2010).  Our Supreme Cout has elaborated on that standard, emphasizing that courts must focus on how the plaintiff's pleadings described the defendant's legal duties.  *See Bruno*, 106 A.3d at 56. A plaintiff may not pursue a claim of negligence where the alleged duty breached by the defendant arises from the parties' contract:

> The general governing principle which can be derived from our prior cases is that our Court has consistently regarded the nature of the duty alleged to have been breached, as established by the underlying averments supporting the claim in a plaintiff's complaint, to be the critical determinative factor in determining whether the claim is truly one in tort, or for breach of contract. In this regard, the substance of the allegations comprising a claim in a plaintiff's complaint are of paramount importance, and, thus, the mere labeling by the plaintiff of a claim as being in tort, e.g., for negligence, is not controlling. If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract – i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract – then the claim is to be viewed as one for breach of contract.  If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort.

*Id*. (footnotes and internal citations excluded).

- 24 -

With that standard in mind, we now proceed to assess the nature of the duties described in SpiriTrust's respective breach of contract and negligence claims. In Count I of the amended complaint, SpiriTrust alleged that Wagman breached the A121 contract by failing to complete its "site work" projects "in a reasonable workmanlike manner and in accordance with industry standards." Amended Complaint, 5/17/2021, at ¶¶ 36-37. Similarly, in Count II, SpiriTrust alleged that Wagan had breached its obligation to perform "the design and construction of the retaining walls . . . in a reasonably workmanlike manner" *id*., at ¶ 48, or "in accordance with industry standards[.] *Id*., at ¶¶ 49-52.

The language of Count III uses slightly different terminology to establish Wagman's liability but repeats as the basis for negligence the same averments alleging a breach of contract in Count II. This negligence count provides that "Wagman was responsible for both the construction and the architectural and structural design" of the retaining walls. *Id*., at ¶ 55. SpiriTrust asserted that Wagman breached its "duty to design the retaining walls in a safe manner consistent with accepted engineering standards and industry practice[.]" *Id*., at ¶ 57. In addition to carrying out the work in ways that did not comport with "accepted engineering standards and industry practice," it was alleged that Wagman also "failed to use the services of a licensed engineer in the design of the retaining walls." *Id*., at ¶ 58.

SpiriTrust attempts to classify its negligence count as a claim of "professional negligence," distinguishing the duty imposed for professional services as distinct from those owed pursuant to its contracts with Wagman. *See Merlini ex rel. Merlini v. Gallitzin Water Auth.*, 934 A.2d 100, 104 (Pa. Super. 2007) (holding that a professional negligence can be distinguished from an ordinary negligence claim by determining "(1) whether the claim pertains to an action that occurred within the course of a professional relationship; and (2) whether the claim raises questions of professional judgment beyond the realm of common knowledge and experience.").

We do not find this distinction to be availing because the breach of contract and negligence claims contain the same underlying allegation that Wagman breached a duty to provide the services outlined in the parties' construction contracts. Wagman was contracted to complete a project involving the design and construction of retaining walls and site work. The duties outlined in the contracts contemplated that Wagman would be carrying out engineering services when completing those tasks. The Amended Complaint similarly references Wagman's contractual duties to design the structures to be built on SpiriTrust's property.

In sum, then, the gist of the alleged duty in the breach of contract counts is that Wagman had to design and construct the retaining walls "in a reasonable workmanlike manner and in accordance with industry standards." The gist of the alleged duty in the negligence count is that Wagman had to

design and construct the retaining walls in accordance with "accepted engineering standards and industry practice."

There appears to be no material difference between "industry standards" and "industry practice," the terms used by SpiriTrust in its amended complaint to describe the respective duties in the breach of contract and negligence counts. The record instead establishes that the duty described in the negligence count arises from Wagman's contractual obligation to provide engineering services and to apply the requisite expertise when carrying that duty out.

Thus, the trial court did not err in sustaining Wagman's preliminary objection as to Count III because the duty described in the negligence count was duplicative of, and not in addition to, the duties already imposed by the parties' contracts.

SpiriTrust's final claim pertains again to the portion of the trial court's order sustaining a preliminary objection as to Count III (Negligence), this time disputing the application of the economic loss doctrine.[9] Having found that the trial court did not err in applying the gist of the action doctrine as to this

---

[9] While closely related, the gist of the action doctrine and the economic loss doctrine are distinct. The gist of the action doctrine prevents a party from re-casting a breach of contract claim as a separate claim of negligence, whereas the economic loss doctrine permits a party to bring a tort action for purely economic damages as long as the asserted duty is independent from a contractual obligation. *See generally **Dittman v. UPMC***, 196 A.3d 1036, 1052 (Pa. 2018).

same count, it is unnecessary for us to separately address whether the economic loss doctrine is also applicable.

Order reversed as to Counts I and II of the amended complaint; order affirmed as to Count III of the amended complaint. Case remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.

Judge McCaffery did not participate in the consideration or decision of this case.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 04/23/2024