J-A19029-23

2024 PA Super 46

| | | |
|---|---|---|
| FIVE STAR BANK AND FINANCIAL INSTITUTIONS, INC., | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 2432 EDA 2022 |
| MATTHEW CHIPEGO, CHARLENE MOWREY, CONSTANCE CHURCHILL AND JOSEPH EWING, INDIVIDUALLY AND ON BEHALF OF SIMILARLY SITUATED INDIVIDUALS | : | |

Appeal from the Order Entered December 7, 2021
In the Court of Common Pleas of Philadelphia County
Civil Division at No: 170502466

BEFORE:   BOWES, J., STABILE, J., and PELLEGRINI, J.[*]

OPINION BY STABILE, J.:                      **FILED MARCH 14, 2024**

Individuals from Pennsylvania and New York (collectively "the Borrowers") filed this class action alleging that Appellant, Five Star Bank and Financial Institutions, Inc. ("the Bank"), violated the Borrowers' rights under the Uniform Commercial Code in the course of repossessing their vehicles. In an order dated October 7, 2022, this Court granted the Bank leave to take an interlocutory appeal from a December 7, 2021 order denying the Bank's motion to dismiss the New York branch of this action for lack of standing. The same order directed the parties to brief whether the trial court has subject matter jurisdiction over the New York branch of this action. We hold that the trial court has subject matter jurisdiction over the New York branch of this

_____

[*] Retired Senior Judge assigned to the Superior Court.

action, and that the New York plaintiffs have standing to pursue relief against the Bank in this action.  Accordingly, we affirm.

On May 16, 2017, the Borrowers, two individuals from Pennsylvania and two from New York ("the New York plaintiffs"), filed a consumer class action on behalf of borrowers who had their vehicles repossessed by the Bank.  The Borrowers alleged that the Bank's repossession practices, particularly repossession notices that the Bank sent to the Borrowers, violated various provisions in Pennsylvania's and New York's Uniform Commercial Codes ("UCC").[1]  Since the Bank's appeal focuses on the New York plaintiffs, we concentrate our attention on the alleged violations of New York's UCC.

The Bank filed preliminary objections to the complaint alleging lack of personal jurisdiction and improper venue.  The trial court overruled the Bank's preliminary objections.

The Borrowers filed an amended complaint replacing one of the original plaintiffs with another individual.

The amended complaint alleged the following relating to the two New York plaintiffs.  The first plaintiff, Constance Churchill, purchased and financed a 2007 Dodge Dakota pickup truck for personal use from West Herr Dodge in Orchard Park, NY.  Amended Complaint at ¶ 37.  The Bank financed Churchill's purchase and took a security interest in the vehicle.  *Id.* at ¶¶ 38-39.

---

[1] The complaint alleged violations of 13 Pa.C.S.A. §§ 9610-9614 and N.Y. UCC §§ 9-610-9-614 (McKinney).  The complaint sought damages against the Bank under 13 Pa.C.S.A. § 9625 and N.Y. UCC § 9-625.   Pennsylvania's and New York's versions of these statutes are identical.

Churchill's finance transaction made the Bank the secured party, and monthly payments were made to the Bank. *Id.* at ¶ 40. Churchill fell behind on her monthly payments, and the Bank determined there was a default. *Id.* at ¶ 41. Accordingly, the Bank, as the lender and secured party, repossessed Churchill's Dodge vehicle or ordered that it be repossessed. *Id.* at ¶ 42.

Article 9, Part 6 of New York's UCC requires a prompt post-repossession notice to the borrower advising of the repossession and that the borrower can "redeem" (or get her vehicle back) by paying past due payments and fees, the method of intended disposition, whether the debtor may be liable for a deficiency or entitled to a surplus, and other information. *Id.* at ¶ 43 (citing N.Y. UCC § 9-614(a)(1), incorporating N.Y. UCC § 9-613(a); N.Y. Gen. Oblig. Law § 7-401(2)). The Bank sent a letter to Churchill enclosing a Notice of Right to Redeem ("Repossession Notice"). *Id.* at ¶ 44. According to the amended complaint, the Repossession Notice did not state the method of intended disposition. *Id.* at ¶ 45. While stating that the vehicle would be sold, the Repossession Notice did not state whether it would be sold by public or private sale, as required by N.Y. UCC § 9-614(a)(1), incorporating N.Y. UCC § 9-613(a)(3). *Id.* at ¶ 46. If sold by public sale, the Repossession Notice failed to list the required statement of the date and place of any public sale or auction, as required by N.Y. UCC § 9-614(a)(1), incorporating N.Y. UCC § 9-613(a)(5). *Id.* at ¶ 47. The Repossession Notice did not advise the borrower that she was entitled to an accounting of any unpaid indebtedness or the charge (if any) for such an accounting, as required by N.Y. UCC § 9-614(a)(1),

incorporating N.Y. UCC § 9-613(a)(4). *Id.* at ¶ 48. The Repossession Notice did not provide an itemized statement of the dollar amount needed to redeem, as required by N.Y. UCC § 9-611(b) and N.Y. Gen. Oblig. Law § 7-401(2). *Id.* at ¶ 49. Instead, it conditioned redemption of the vehicle on payment of undescribed and unincurred "estimated" expenses, or lump sum "storage costs" not yet incurred. *Id.* at ¶ 50. These violations subjected the Bank to minimum damages under N.Y. UCC § 9-625(c)(2) of not less than the credit service charge plus 10% of the principal amount of the obligation. *Id.* at ¶ 76.

The Borrowers made virtually identical allegations with regard to a second New York plaintiff, Joseph Ewing. *Id.* at ¶¶ 56-64.

The Bank did not file preliminary objections to the amended complaint, electing instead to file an answer to the amended complaint.

After several years of discovery, the Borrowers moved for class certification. On September 30, 2021, the trial court certified two subclasses of consumer borrowers from Pennsylvania and two from New York to pursue claims for statutory damages under the UCC. The two subclasses of New York plaintiffs were (1) persons whose vehicles were sold or auctioned by the Bank, leaving a surplus or alleged deficiency balance, and (2) persons whose vehicles were not yet sold or auctioned by the Bank. Order, 9/30/21. The court divided Pennsylvania plaintiffs into identical subclasses. *Id.* Notice of this action was mailed to over 6,300 class members.

The Bank filed a "motion to dismiss" alleging that the Borrowers lacked standing to sue. On December 7, 2021, the trial court denied the motion to dismiss. On December 20, 2021, the Bank filed a petition for permission to take an interlocutory appeal to this Court. The trial court took no action on this petition, and it was deemed denied on January 19, 2021. Pa.R.A.P. 1311(b) (petition to take interlocutory appeal by permission deemed denied if trial court fails to act upon it within thirty days after date of filing).

On February 9, 2022, the Bank filed a timely petition in this Court for leave to take an interlocutory appeal as to whether the New York residents have standing to bring suit in a Pennsylvania court. *Id.* (petition for leave to take interlocutory appeal must be filed in appellate court within thirty days after petition is deemed denied by trial court). On October 7, 2022, this Court granted the Bank leave to take an interlocutory appeal on the standing issue. Our order also directed the parties to brief whether the trial court had subject matter jurisdiction to (1) certify the New York subclasses and (2) "determine a controversy between New York residents for claimed violations of New York law that occurred in New York where the New York plaintiffs seek statutory damages that are not available to them under New York law." Order, 23 EDM 2022, 10/7/22 (citing **Bisher v. Lehigh Valley Health Services, Inc.**, 265 A.3d 383, 399 (Pa. 2021) (court may raise question of subject matter jurisdiction *sua sponte* at any time)).

The Bank raises the following issues in this appeal:

1. [Did the] trial court have jurisdiction to certify the New York subclasses?

2. [Did the] trial court have subject matter jurisdiction to determine a controversy between New York residents for claimed violations of New York law that occurred in New York and seek classwide damages explicitly prohibited under New York law?

3. [Did the] trial court err in finding that New York residents who sued a New York Bank pursuant to New York's UCC statute regarding transactions that occurred wholly in New York and suffered no injury had standing to bring suit in a Pennsylvania Court?

Bank's Brief at 2-3.

The first two questions in the Bank's brief concern whether the trial court has subject matter jurisdiction to certify the New York subclasses and resolve issues of New York law between New York residents. We answer these questions in the affirmative.

The question of whether a court has subject matter jurisdiction over an action is a "pure question of law[.]" *Clark v. Peugh*, 257 A.3d 1260, 1266 (Pa. Super. 2021). Subject-matter jurisdiction is "the power of the court to hear the cases of the class to which the case before the court belongs, that is, to enter into inquiry, whether or not the court may ultimately grant the relief requested." *Harley v. HealthSpark Found.*, 265 A.3d 674, 687 (Pa. Super. 2021). "Except where exclusive original jurisdiction of an action or proceeding is by statute . . . vested in another court of this Commonwealth, the courts of common pleas shall have unlimited original jurisdiction of all actions and proceedings, including all actions and proceedings heretofore cognizable by

law or usage in the courts of common pleas." 42 Pa.C.S.A. § 931(a). The question of subject matter jurisdiction is not waivable and may be raised by a court on its own motion. *Domus, Inc. v. Signature Building Systems of PA, LLC*, 252 A.3d 628, 636 (Pa. 2021).

Subject matter jurisdiction is different from personal jurisdiction. Personal jurisdiction is "[the] court's power to bring a person into its adjudicative process." *Grimm v. Grimm*, 149 A.3d 77, 83 (Pa. Super. 2016). In addition, "personal jurisdiction is readily waivable." *Id.*

In this case, while the Bank challenged the trial court's personal jurisdiction in the trial court, it has abandoned its challenge to personal jurisdiction in this appeal. The only jurisdictional argument that the Bank raises in this appeal is that the trial court lacks subject matter jurisdiction over the New York branch of this action, *i.e.*, the dispute between a subclass of New York residents against a New York bank for alleged violations of New York law.[2]

We agree with the Borrowers that the trial court has subject matter jurisdiction over the New York branch of the action. The Judicial Code authorizes Pennsylvania courts to apply the law of other states in appropriate cases. *See* 42 Pa.C.S.A. § 5327(b) ("In determining the law of any jurisdiction . . . thereof outside this Commonwealth, the tribunal may consider any

---

[2] There is no dispute that the trial court has subject matter jurisdiction over the claims of the Pennsylvania plaintiffs in this action.

relevant material or source, including testimony, whether or not submitted by a party or admissible under the rules of evidence"); ***see also A.Y. v. Janssen Pharmaceuticals, Inc.***, 224 A.3d 1, 17-18, 24-27 (Pa. Super. 2019) (applying Tennessee law to substantive claims in product liability action); ***Hammons v. Ethicon, Inc.***, 190 A.3d 1248, 1258 (Pa. Super. 2018) (applying Indiana law to most substantive claims in product liability action and New Jersey law to punitive damage claims). In view of these authorities, the fact that New York substantive law applies to the claims of the New York plaintiffs does not prevent Pennsylvania courts from exercising subject matter jurisdiction over the New York branch of this action.

The Bank argues that the trial court's decision to apply Pennsylvania procedural rules instead of what it claims is a New York procedural rule, CPLR § 901(b), demonstrates that the court "is not competent to handle claims arising under New York laws." Bank's Brief at 16. The Bank contends:

> The Court of Common Pleas applied its own procedural rules, ignoring the fatal impact of N.Y. CLS CPLR § 901(b) to the claims brought by the New York classes. This provision unequivocally prohibits no-injury class actions, specifically stating that: "[u]nless a statute creating or imposing a penalty, or a minimum measure of recovery specifically authorizes the recovery thereof in a class action, an action to recover a penalty, or minimum measure of recovery created or imposed by statute may not be maintained as a class action." N.Y. CLS CPLR § 901(b). In other words, New York law does not allow a class action to recover a minimum measure of recovery created or imposed by statute unless the statute specifically authorizes class actions. In the instant matter, there is no such authorizing statute. Nothing in Article 9 of New York's Uniform Commercial Code specifically authorizes the recovery of such damages in a class action. ***See***, ***e.g.***, Official Comment 4 to N.Y. CLS UCC § 9-625 ("Subsection

- 8 -

(c)(2)) provides a minimum, statutory, damage recovery for a debtor and secondary obligor in a consumer-goods transaction"). Accordingly, Section 901(b) of N.Y. CLS CPLR bars class actions such as that brought here by the New York classes who seek statutory damages under N.Y. CLS UCC § 9-625(c).

Bank's Brief at 16-17.

This argument is devoid of merit. The Bank's argument is nothing more than the contention that the trial court failed to apply the proper law, which, according to the Bank, is N.Y. CLS CPLR § 901(b). The allegation that the court applied the wrong law comes nowhere close to establishing that it lacks subject matter jurisdiction over this case. A court lacks subject matter jurisdiction when it lacks **authority to hear** a particular case, **Harley**, 265 A.3d at 687, not merely when, in a party's opinion, it applies the wrong law to the case. We know of no law, nor does the Bank point to any, that prohibits the trial court from deciding the New York branch of this case—and the authorities gathered above support the opposite conclusion.[3]

---

[3] At least one state court outside of New York has exercised subject matter jurisdiction over a class action in which the defendants argued that CPLR § 901(b) precluded the class action. **See Weber v. U.S. Sterling Securities, Inc.**, 282 Conn. 722, 924 A.2d 816, 827-28 (2007). The plaintiff in **Weber** filed a class action against a New York corporation, a Delaware limited liability corporation ("LLC") and individual members of the LLC residing in Connecticut. The plaintiff alleged that the defendants violated the federal Telephone Consumer Protection Act, 47 U.S.C. § 227, by sending unsolicited facsimile advertisements to 5,000 individuals within New York state. The Connecticut Supreme Court held that Section 901(b) applied under choice of law principles and went on to conclude that Section 901(b) barred the class action. **Id.**, 924 A.2d at 827-28. We regard **Weber** as persuasive authority for the proposition that Pennsylvania state courts can exercise subject matter jurisdiction over a
*(Footnote Continued Next Page)*

In its third and final argument, the Bank contends that the New York residents lack standing to bring an action in a Pennsylvania court because they are suing under New York laws, N.Y. UCC §§ 9-610—9-614, for which the Pennsylvania legislature never authorized standing, and because they either suffered no harm or suffered harm that has no nexus to the alleged deficiencies in their repossession notices.

The Borrowers argue that the Bank waived the issue of standing by failing to raise it in its preliminary objections to the complaint. Parties, however, may challenge standing either in preliminary objections or in the answer to the complaint. *Drake v. Polyflow, Inc.*, 109 A.3d 250, 258 (Pa. Super. 2015). The Bank alleged in its answer to the complaint with new matter that the New York plaintiffs lack standing. Accordingly, The Borrowers' claim of waiver fails.

In order to address the Bank's standing argument, we must first determine the proper standard of review from the denial of the Bank's "motion

_____

class action in which the defendant contends that Section 901(b) precludes the action against New York defendants. *See Turnpaugh Chiropractic Health and Wellness Center, P.C. v. Erie Insurance Exchange*, 297 A.3d 404, 423 n.11 (Pa. Super. 2023) ("[A]lthough we are not bound by decisions from . . . courts in other jurisdictions, we may use them for guidance to the degree we find them useful, persuasive, and . . . not incompatible with Pennsylvania law"). We do not express any opinion as to whether *Turnpaugh* is persuasive on the merits of the Bank's § 901(b) defense, *i.e.*, on whether CPLR § 901(b) bars the Borrowers' action against the Bank. This affirmative defense falls outside the scope of our October 7, 2022 order limiting interlocutory review to issues of subject matter jurisdiction and standing.

to dismiss." While motions to dismiss are permissible in federal court, **see** Fed.R.Civ.P. 12, they are not a cognizable form of procedure under the Pennsylvania Rules of Civil Procedure. Accordingly, we will apply the standards governing the Pennsylvania motion closest in form to the Bank's motion to dismiss. Since the pleadings were closed at the time of the Bank's motion, we will apply the standards governing motions for judgment on the pleadings.

Appellate review of a trial court's decision to grant or deny judgment on the pleadings

> is limited to determining whether the trial court committed an error of law or whether there were facts presented which warrant a jury trial. In conducting this review, we look only to the pleadings and any documents properly attached thereto. Judgment on the pleadings is proper only where the pleadings evidence that there are no material facts in dispute such that a trial by jury would be unnecessary.

**Bowman v. Sunoco, Inc.**, 986 A.2d 883, 886 (Pa. Super. 2009). In reviewing a motion for judgment on the pleadings,

> [an] appellate court will apply the same standard employed by the trial court. A trial court must confine its consideration to the pleadings and relevant documents. The court must accept as true all well pleaded statements of fact, admissions, and any documents properly attached to the pleadings presented by the party against whom the motion is filed, considering only those facts which were specifically admitted.

**Southwestern Energy Production Co. v. Forest Resources, LLC**, 83 A.3d 177, 185 (Pa. Super. 2013).

The parties agree that Pennsylvania law applies to the standing issue. *See* Bank's Brief at 21-24 (citing Pennsylvania standards); Borrowers' Brief at 23, 26 (same). The general parameters for determining standing are as follows:

> [A] party seeking judicial resolution of a controversy must establish as a threshold matter that he has standing to maintain the action. The core concept of standing is that a person who is not adversely affected in any way by the matter he seeks to challenge is not aggrieved thereby and has no standing to obtain a judicial resolution to his challenge.
>
> Thus, the inquiry into standing ascertains whether a party is the proper party entitled to make the legal challenge to the matter involved. A person who has no stake in the matter has no standing to obtain judicial resolution of his challenge to the matter.

*In re Walker*, 208 A.3d 472, 475 (Pa. Super. 2019) (citations and footnote omitted) (some formatting altered).

In Pennsylvania, standing may be granted by statute. *Housing Authority of County of Chester v. Pennsylvania State Civil Service Com'n ("Housing Authority")*, 730 A.2d 935, 941 (Pa. 1999); *Milby v. Pote*, 189 A.3d 1065, 1076–77 (Pa. Super. 2018). When a statute confers legal protections, Pennsylvania's doctrine of standing merely asks whether "the interest the plaintiff seeks to protect is arguably within the zone of interests to be protected by the statute." *Milby*, 189 A.3d at 1076–77. Since *ex parte* repossessions deprive an owner of property without opportunity to be heard and have for decades presented opportunity for abuse, the UCC

requires a secured party to send specific notice to the borrower after repossession advising of certain rights. N.Y. UCC § 9-611(b), 9-614(a).

The Borrowers allege in this action that the Bank breached its obligation under Article 9, Part 6 of New York's UCC to send proper notice to the New York plaintiffs after repossessing their vehicles. In particular, the Borrowers allege that the Bank's repossession notice:

(1) failed to state the method of intended disposition, that is, whether the car would be sold by public or private sale, as required by N.Y. UCC § 9-614(a)(1), incorporating N.Y. § UCC 9-613(a)(3);

(2) failed to state, in the event of a public sale, the date and place of any public sale or auction, as required by N.Y. UCC § 9-614(a)(1), incorporating N.Y. UCC § 9-613(a)(5);

(3) failed to advise that the borrower was entitled to an accounting of any unpaid indebtedness, and the charge (if any) for such an accounting, as required by N.Y. UCC § 9-614(a)(1), incorporating N.Y. UCC § 9-613(a)(4); and

(4) failed to provide an itemized statement of the dollar amount needed to redeem, as required by N.Y. UCC § 9-611(b) and N.Y. Gen. Oblig. Law § 7-401(2), and instead conditioned redemption of the vehicle on payment of undescribed and unincurred "estimated" expenses, or lump sum "storage costs" not yet incurred.

Amended Complaint at ¶¶ 43-49. In our view, the New York plaintiffs, having allegedly suffered violations of their rights under New York's UCC, are individuals whom these UCC provisions are designed to protect. In other words, "the interests [they] seeks to protect [are] arguably within the zone of interests to be protected by the statute." *Milby*, 189 A.3d at 1076–77. Thus, they have standing to seek relief against the Bank for violations of New York's UCC.

Further, New York's UCC affords the New York plaintiffs the right, whenever the secured party failed to comply with Article 9, Part 6, to seek statutory damages based upon the formula in N.Y. UCC § 9-625(c)(2). This provision states that statutory damages include minimum damages of not less than the credit service charge plus 10% of the principal amount of the obligation. This remedy "provides a minimum, statutory, damage recovery for a debtor . . . in a consumer-goods transaction[,][4] [and it] is designed to ensure that every noncompliance with the requirements of Part 6 in a consumer-goods transaction results in liability, regardless of any injury that may have resulted." N.Y. UCC § 9-625, Official Comment 4; *see also Coxall v. Clover Commercial Corp.*, 781 N.Y.S.2d 567, 578-79 (Kings Cty. 2004)

---

[4] The Bank does not contend, at least in this stage of the case, that the transactions in question fall outside the realm of a "consumer goods transaction" under Article 9, Part 6 of New York's UCC. Therefore, we will assume for purposes of this appeal that the transactions between the New York plaintiffs and the Bank constitute consumer goods transactions.

(Section 9-625(c)(2) provides right to "statutorily-prescribed minimum damages" even if plaintiff sustains no actual loss).[5] It is clear that New York's UCC affords the New York plaintiffs standing to seek these damages in court. N.Y. UCC § 1-305(b) ("Any right or obligation declared by this title is enforceable by action").

The Bank cites *TransUnion LLC v. Ramirez*, 594 U.S. 413, 141 S.Ct. 2190 (2021), for the proposition that "[t]he Supreme Court confirmed that every member of a class must have standing in a class action." Bank's Brief at 26 n.7. *Ramirez* is inapposite because it concerns standing to sue in federal court, not in Pennsylvania court. "While standing in a federal court is derived from the United States Constitution, the same is not true in Pennsylvania." *Johnson v. American Standard*, 8 A.3d 318, 327 n.9 (Pa. 2010) ("We fail to see why [defendant] invokes Article III of the United States Constitution and its requirement of a 'case or controversy'"); *see also Firearm Owners Against Crime v. Papenfuse*, 261 A.3d 467, 481-82 (Pa. 2021) (distinguishing Pennsylvania's more liberal standing test from the constitutional test for standing in federal court). As discussed above, in

---

[5] This Court construes Pennsylvania's UCC the same way. *See Cubler v. TruMark Financial Credit Union*, 83 A.3d 235, 242 (Pa. Super. 2013) (noting that 13 Pa.C.S.A. § 9625, Pennsylvania's counterpart to N.Y. UCC § 9-625, "removed the requirement for an aggrieved debtor/obligor to prove actual damages in order to recover statutory damages under § 9625 in recognition of the inherent difficulty for a claimant to quantify and prove actual damages").

Pennsylvania courts, a statutory violation—and in particular, the statutory violation alleged here—is sufficient to confer standing. ***Housing Authority***, 730 A.2d at 941.

The Bank attempts to limit the reach of statutory standing by claiming that such standing may not arise from a statute created by another legislature such as New York's. Pointing to text in ***Housing Authority*** that standing may be conferred by a statute "properly enacted by the Pennsylvania legislature," ***id.***, the Bank posits that statutes not enacted in Pennsylvania (e.g., New York's version of the UCC) fail to confer standing. We disagree. The sole issue before the ***Housing Authority*** court was whether the plaintiff had standing to enforce a Pennsylvania statute, the Military Affairs Act, 51 Pa.C.S.A. § 7101 *et seq*. This case did not concern whether the plaintiff had standing to enforce a statute enacted in another state. The Bank does not cite any other decision for the proposition that parties in Pennsylvania courts lack standing to enforce out-of-state statutes; nor are we aware of any. To the contrary, our jurisprudence indicates that plaintiffs from outside Pennsylvania have standing to enforce out-of-state statutes in Pennsylvania, assuming jurisdiction exists over the defendant and the subject matter of the case. ***See***, ***e.g.***, ***Hammons***, 190 A.3d at 1255, 1270-78 (affirming judgment in favor of Indiana plaintiff who brought action in Pennsylvania to enforce rights under Indiana product liability statute). This seems particularly true where, as here, the out-of-state statute grants standing to sue to enforce

- 16 -

statutory rights, N.Y. UCC § 1-305(b), and authorizes recovery of minimum statutory damages "regardless of any injury that may have resulted." N.Y. UCC § 9-625, Official Comment 4.

The Bank claims that the New York plaintiffs who redeemed their vehicles cannot show causation of harm, thus, they are not aggrieved, and therefore lack standing to sue for statutory damages. The Bank conflates an asserted merits defense (no causation of actual harm) with the test for mere standing to sue to seek to prove a violation, which is whether "the interest the plaintiff[s] seek[] to protect is arguably within the zone of interests to be protected by the statute." *Milby*, 189 A.3d at 1076–77. As stated above, the allegations in the amended complaint establish that the New York plaintiffs have an interest in enforcing rights protected by Article 9, Part 6 of New York's UCC. Furthermore, even assuming the New York plaintiffs cannot prove causation of harm, they still have the right to seek the statutory damages available under N.Y. UCC § 9-625(c)(2) "regardless of any injury that may have resulted." *See also Coxall*, 781 N.Y.S.2d at 578-79.

Next, the Bank argues that the New York plaintiffs who lacked the ability to redeem were not aggrieved by the notices of repossession. We disagree. Once again, the New York UCC permits these plaintiffs to seek statutory damages under N.Y. UCC § 9-625 for the secured party's failure "regardless of any injury that may have resulted." N.Y. UCC § 9-625, Official Comment 4; *see also Coxall*, 781 N.Y.S.2d at 578-79.

For these reasons, the Bank's challenge to standing fails.

Accordingly, we hold that the trial court has subject matter jurisdiction over the New York branch of this action, and that the New York plaintiffs have standing to pursue relief against the Bank in this action.

Order affirmed. Case remanded for further proceedings. Jurisdiction relinquished.

Judge Pellegrini did not participate in the consideration and decision of this case.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/14/2024